IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL W. PAULSON, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 20-2653 |
| KEVIN F. KELLY, *et al.* : | |
|     Defendants. : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                                                                   **JUNE  19 , 2020**

      Michael W. Paulson, a prisoner currently incarcerated at the George W. Hill Correctional Facility, filed this civil rights action pursuant to 42 U.S.C. § 1983. Paulson seeks leave to proceed i*n forma pauperis*. For the following reasons, Paulson will be granted leave to proceed *in forma pauperis*, and his Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

**I.   FACTUAL ALLEGATIONS**

      Paulson has named the following Defendants: Kevin F. Kelly (identified in the Complaint as "President Judge – Delaware County/Media"), Jeffery J. Roney (identified as a "Supervisory Probation Officer"), Christopher J. Dirosato (identified as an "Assistant District Attorney"), and David M. Iannucci (identified as an "Assistant Public Defender"). (ECF No. 1 at 2-3.)[1]  Briefly stated, Paulson asserts claims for "false incarceration, illegal sentencing condition, [and] illegal search and seizure." (*Id.* at 3.) Paulson seeks immediate release from custody and "discharge from parole/probation" as well as lost wages and punitive damages for time spent incarcerated. (*Id.* at 5.) Paulson also seeks the "termination of Defendants from roles." (*Id.*)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Paulson avers that on March 29, 2019, he reported to Agent Roney at Adult Probation and Parole of Delaware County. (*Id.* at 12.) While in Roney's office, Paulson avers that his cell phone was illegally searched and seized, without his permission and without a warrant, in violation of his Fourth Amendment rights. (*Id.*) Paulson avers that he was illegally detained because his child's mother (Stevie Kell) communicated with probation on the day prior requesting that a welfare check be conducted. (*Id.*) Agent Roney detained Paulson, and Paulson was transported to the George W. Hill Correctional Facility. (*Id.*)

On April 28, 2019 Agent Roney testified at a Gagnon I probable cause hearing that Stevie Kell was planning to file a protection from abuse petition against Paulson. (*Id.*) Paulson avers that this information was false and that Roney "violated the truth determining process that is used at Gagnon hearings." (*Id.*) Paulson further avers that Kell is "an ex girlfriend and mother to [their] 7 month old son [and] is not the original victim of [his] case (CP-23-CR-6159-2013) . . . and does not have a protection from abuse order against [him]." (*Id.* at 13.)

Paulson avers that on May 1, 2019, Judge Kelly "issued an illegal sentencing condition" directing that Paulson have no contact with Kell and her family. (*Id.* at 12.) Paulson further avers that he was "found in violation." (*Id.*) Paulson contends that the truth determining process was undermined and he was denied his right to cross examine the testimony of a witness[2] who testified against him. (*Id.*) Paulson also asserts that Assistant Public Defender Iannucci failed to object when the Commonwealth (Assistant District Attorney Dirosato) and Judge Kelly allowed the "truth determining process to be violated when issuing the illigal [sic] sentence condition" because there was not sufficient evidence for a violation. (*Id.* at 12-13.) Paulson faults Iannucci for not objecting to the illegal search and seizure of his cell phone which violated his Fourth

---

[2] Paulson did not identify the witness in his Complaint.

2

Amendment rights. (*Id.* at 13.) Paulson further avers that it was "illigal [sic] for the Judge to issue a no contact order" and it was "unconstitutional for [his] probation/parole to be soley [sic] violated on Stevie Kell asking probation to do a welfare check" on him. (*Id.*)

A review of public records indicates that a Gagnon I hearing was held on April 24, 2019 before the Honorable John P. Capuzzi, Sr., and a Gagnon II hearing was held on May 1, 2019 before the Honorable Kevin F. Kelly. *See Commonwealth v. Paulson*, CP-23-CR-6159-2013 (C.C.P. Delaware). On June 28, 2019, Judge Kelly sentenced Paulson to a minimum of nine months to a maximum of one-year imprisonment and a maximum of one-year probation, with the following conditions:

> Comply with rules and regulations governing Probation and or Parole
>
> Have psychological evaluation
>
> Comply with following directive(s) of Court: No contact w/ original victim of this case as well as Amber Connor. No direct or indirect contact w/ Stevie Kell or her family. No contact with any victims by way of social media. Defendant to be paroled by parole plan by Judge Kelly. Sign all waivers for AP&P.

(*Id.*) On November 22, 2019, Judge Kelly sentenced Paulson to a minimum of one day to a maximum of one-year imprisonment, with the following conditions:

> Comply with rules and regulations governing Probation and or Parole
>
> Full Backtime DCP: 497 days with release on max date.
>
> Comply with following directive(s) of Court: No contact with original victim as well as Amber Connor, [no direct] or indirect contact with Stevie Kell and/or her family. No contact also includes through social media. A parole plan is to be submitted and approved by the court prior to release.

(*Id.*) Since that date, Paulson has filed several motions for reconsideration, release, and/or early parole, all of which have been denied and/or dismissed.

3

## II.  STANDARD OF REVIEW

The Court will grant Paulson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice. *Id.*  As Paulson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).  The Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## II.  DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.  Paulson's Claims Are Not Cognizable

Paulson's claims are based on allegations that his constitutional rights have been violated in connection with the revocation of his probation.  Paulson's § 1983 Complaint improperly challenges the fact of his confinement and seeks release based on allegedly defective probation revocation procedures, when the proper vehicle for such claims is a petition for writ of *habeas*

---

[3] However, as Paulson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

4

*corpus*.[4]  *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006); *see also Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) ("Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole.").  Furthermore, pursuant to the favorable termination rule, "a harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under § 1983 unless that conviction or sentence was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

The United States Court of Appeals for the Third Circuit has interpreted *Heck* to mean that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings."  *Gilles v. Davis*, 427 F.3d 197, 208-09 (3d Cir. 2005).  If the success of Paulson's § 1983 claim necessarily requires a finding regarding the "invalidity of the . . . decision to revoke" probation, the claim fails.  *Williams*, 453 F.3d at 177;[5] *Burton v. Delaware Cty. Court*

---

[4] To the extent Paulson seeks to challenge the revocation of his probation and resulting imprisonment, he must do so by filing a petition for a writ of *habeas corpus* after exhausting state remedies along with either the $5 filing fee or a motion for leave to proceed *in forma pauperis*. *See* 28 U.S.C. § 2254.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  The dismissal of this § 1983 case does "not constitute a bar to any collateral attacks by [Paulson] against his state proceedings." *Rushing v. Pennsylvania*, 637 F. App'x 55, 58 n.4 (3d Cir. 2016) (per curiam).

[5] In *Williams*, the plaintiff instituted a § 1983 action against his parole officer following the revocation of his parole, alleging the officer "seized him without probable cause and caused him to be arrested and falsely incarcerated."  453 F.3d at 176.  The parole officer arrested plaintiff for technical violations of his parole including his failure to obtain approval to change his employment and residence.  *Id.* at 175.  The United States Court of Appeals for the Third Circuit affirmed the district court's dismissal of the case because a finding for plaintiff on his § 1983 claims against the parole officer would necessarily demonstrate the invalidity of the revocation decision, which had not been rendered invalid.  *Id.* at 177.

*House*, Civ. A. No. 12-4175, 2012 WL 3223691, at *2 (E.D. Pa. Aug. 7, 2012) (the doctrine set forth in *Heck* has been extended to civil rights cases challenging parole and probation revocations).[6]

Paulson's claim regarding the use of false allegations as evidence against him during the probation revocation proceedings fails because it would "necessarily demonstrate the invalidity of the . . . decision" to revoke his probation. *Williams*, 453 F.3d at 177. The Complaint avers in part that probation violations were filed against Paulson, which resulted in him being placed back into prison.[7] Paulson, however, does not allege that the decision to revoke his probation

---

[6] *See McKinney v. Pennsylvania Bd. of Prob. & Parole*, 405 F. App'x. 646, 647 (3d Cir. 2010) (holding that McKinney's claims that he had been imprisoned beyond the maximum terms of his sentences for state convictions and parole violations and that the defendants violated his rights by incorrectly calculating his maximum sentence and by failing to conduct a parole revocation or parole hearing when they revoked his parole and continued to detain him were barred by *Heck* "because success on his claims would necessarily imply the invalidity of the fact and the duration of his state confinement, which have not been elsewhere invalidated"); *Connolly v. Arroyo*, 293 F. App'x. 175, 177–78 (3d Cir. 2008) (holding that Connolly's claims relating to the parole-revocation process, including a claim that he was denied a timely revocation hearing, were barred by *Heck*); *Hess v. Chronister*, 247 F. App'x. 377, 380 (3d Cir. 2007) (concluding that Hess's claims that the defendants conspired to violate his rights by holding him on a detainer without notifying him of the charges against him or holding a parole-revocation hearing were barred by *Heck* because success on Hess's claims would necessarily imply that his confinement was invalid); *Worthy v. N.J. State Parole Board*, 184 F. App'x. 262, 264 & 266 (3d Cir. 2006) (affirming dismissal on the basis of *Heck* of claims arising from parole revocation proceedings for damages and declaratory relief including a claim that the defendants did not hold a final revocation hearing).

[7] In his Complaint, Paulson also avers that Probation Officer Roney illegally searched and seized his cell phone, without his permission and without a warrant, in violation of his Fourth Amendment rights. (ECF No. 1 at 12.) The Court recognizes that *Heck* does not necessarily bar all Fourth Amendment claims. *Heck*, 512 U.S. at 487 n. 7 ("Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action [i.e., a suit for damages attributable to an allegedly unreasonable search], even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.") (citations omitted). However, *Heck* does bar such claims if they seek damages for the injury of conviction or imprisonment, which is exactly what Paulson seeks here. *See* ECF No. 2 at 5; *Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 223-24 (3d Cir. 2016) (quoting *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998)) ("*Heck* bars only claims which 'seek [ ] to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful'"). When a plaintiff challenges the legality of the underlying search and seizure of his cell phone, and that search and seizure provided evidence to support the conviction, any claims based on the illegal search and seizure of the cell phone are barred by *Heck*. *See Boyer v. Mohring*, 994 F. Supp. 2d 649, 654-655 (E.D. Pa. 2014). Accordingly,

has been favorably terminated or rendered invalid.  *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (*Heck* applied to litigant's claims "asserting that fabricated evidence was used to pursue a criminal judgment"); *Curry v. Yachera*, 835 F.3d 373, 378-79 (3d Cir. 2016) (holding that plaintiff's failure to allege that his conviction was declared invalid warranted dismissal of his § 1983 claim); *see also Brown v. City of Phila.*, 339 F. App'x. 143, 145 (3d Cir. 2009) (noting that a § 1983 claim "based on an allegedly unconstitutional conviction or sentence does not accrue until the invalidation of that conviction or sentence."); *White v. Gittens*, 121 F.3d 803, 807 (1st Cir. 1997) (concluding that § 1983 claim based on revocation of parole was barred by *Heck*; "[a] favorable decision in the § 1983 proceeding would necessarily call into question the validity of the state's decree revoking [plaintiff's] parole and ordering him back to prison. Heck therefore applies, and the § 1983 action is not cognizable in a federal court").

Accordingly, because the decision to revoke his probation has not been rendered invalid, Paulson may not attack it via a § 1983 action.  *See Williams*, 453 F.3d at 177.  Paulson's claims regarding the probation revocation proceedings shall be denied without prejudice to refiling if his probation revocation is ultimately invalidated.  *See Brown*, 339 Fed. Appx. at 145-46 (3d Cir. 2009) (holding that a Section 1983 claim dismissed under the favorable termination rule should

---

*Heck* bars Paulson's Fourth Amendment claims based on the illegal search and/or seizure of his cell phone.
   In any event, even if *Heck* did not apply here, the claim fails as pled because Paulson must allege facts from which it could be plausibly inferred that reasonable suspicion was lacking for the search. "[N]o more than reasonable suspicion" is required to justify a search of a probationer, since a probationer's reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased.  *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005), citing *United States v. Knights,* 534 U.S. at 121, 118-119 (2001).  Paulson has not raised any factual allegations that reasonable suspicion was lacking.  To the contrary, his Complaint avers that his ex-girlfriend contacted Roney asking him to conduct a welfare check of Paulson, which may have given Roney the requisite suspicion to warrant a search of Paulson's cell phone. (ECF No. 1 at 12.)  Without additional facts about the circumstances of the search, this claim is not plausible.

be done without prejudice). In addition to the foregoing, the Court finds that Paulson's Complaint also fails for the reasons which follow.

### B. Official Capacity Claims

Paulson indicates that he is suing the Defendants in their official and individual capacities. (ECF No. 1 at 2-3.) Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

Judge Kelly serves as the president judge on the Delaware County Court of Common Pleas. The Delaware County Court of Common Pleas, as part of Pennsylvania's unified judicial system, shares in the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) (holding that Pennsylvania's Judicial Districts are entitled to immunity from suit under the Eleventh Amendment). As there is no indication Pennsylvania has waived its Eleventh Amendment immunity, Paulson's claims against Judge Kelly in his official capacity are barred by the Eleventh Amendment.

Paulson's official capacity claims against Probation Officer Roney, as an employee of the Delaware County Adult Probation and Parole Services, are also barred by the Eleventh Amendment. The Third Circuit has repeatedly held that "Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity." *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008) (citing *Benn*, 426 F.3d at 241). As Pennsylvania has not waived its sovereign immunity,

and because Congress has not explicitly abrogated immunity through authorizing legislation, the Eleventh Amendment operates as a bar to claims for damages under § 1983 against Delaware County Adult Probation and Parole Services.

Moreover, with respect to the remaining Defendants, nothing in the Complaint plausibly suggests that the claimed constitutional violations stemmed from a municipal policy or custom, or municipal failures amounting to deliberate indifference. Accordingly, because Paulson has not stated a plausible basis for a claim against any municipal entity, his official capacity claims against Dirosato and Iannucci are not plausible.

### C. Individual Capacity Claims

#### a. Judicial Immunity – Judge Kevin F. Kelly

Since Paulson's claims against Judge Kelly are based on acts he took in his judicial capacity while presiding over the criminal matter in which Paulson is a defendant, those claims lack a legal basis because Judge Kelly is entitled to absolute immunity from those claims. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam).

#### b. Prosecutorial Immunity ADA Christopher J. Dirosato

Paulson bases his claims against Assistant District Attorney Dirosato with respect Dirosato's prosecution of the probation violation charges against Paulson. However, prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).

### c. Assistant Public Defender David M. Iannucci

Paulson's claims against Assistant Public Defender Iannucci are based on his performance as Paulson's defense counsel, but the law is settled that criminal defense attorneys are not state actors for purposes of § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.") (footnote omitted); *Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (per curiam) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court.").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Paulson leave to proceed *in forma pauperis* and dismiss his Complaint in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Paulson's claims against Kevin F. Kelly, Christopher J. Dirosato, and David M. Iannucci in their individual and official capacities are dismissed with prejudice and his claims against Jeffery J. Roney in his official capacity are dismissed with prejudice. Paulson's claims against Roney in his individual capacity challenging the search of his phone and the revocation of his probation and related imprisonment are dismissed without prejudice as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[8] This dismissal does not prevent Paulson from proceeding in a new case on a petition for a writ of *habeas corpus* after exhausting state remedies, to the extent he seeks release from confinement based on the alleged unconstitutionality of his imprisonment. An appropriate Order follows.

---

[8] The dismissal is without prejudice to Paulson filing a new case only in the event his underlying probation revocation is reversed, vacated, or otherwise invalidated.

10

**BY THE COURT:**

**/s/ John Milton Younge**
**JOHN MILTON YOUNGE, J.**